UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

OCT 10 2018

David J. Bradley, Clerk of Court

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. 18-cr-603 |
| § | |
| JAIME ALBERTO CANALES § | |
| and § | UNDER SEAL |
| JOHN "JOHNNY" AMAYA § | |

## SUPERSEDING INDICTMENT

The Grand Jury Charges:

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order.

### Introduction

At all times material to this indictment:

1. Webb County was a political subdivision of the State of Texas and was divided into four geographic precincts. The County's primary governing body was a five-member Commissioners Court composed of four Commissioners, one elected from each precinct, and a County Judge elected countywide. Webb County was located in the Southern District of Texas.

2. The Commissioners Court presided over a variety of official matters, including awarding county contracts through a competitive bidding process, building and maintaining roads and bridges within each County precinct, and controlling expenditures of County funds, including those that the County received from the federal government. In each year from 2014 through 2017, the County

received benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of federal assistance.

3.  From in or about January 2011 through in or about August 2018, Defendant Jaime Alberto Canales (CANALES) served as a Webb County Commissioner for Precinct 4. CANALES also represented Webb County on the Laredo Metropolitan Planning Organization (Laredo MPO), a multi-jurisdictional body charged under federal law with reviewing and making decisions regarding transportation planning efforts in the Laredo, Texas area.

4.  Corporation A was a privately owned civil engineering firm headquartered in Houston, Texas, within the Southern District of Texas, and with satellite locations in Austin, Dallas, San Antonio, Laredo, and McAllen. Co-Conspirator A was a resident of McAllen, Texas, within the Southern District of Texas. Co-Conspirator A served as the lead project manager on most of Corporation A's South Texas work.

5.  Defendant John "Johnny" Amaya (AMAYA) was a resident of Laredo, Texas. Through JAUC Services, Inc., a company he owned and controlled, defendant AMAYA was employed by Co-Conspirator A as a consultant for Corporation A from in or about November 2014 through in or about May 2018. In this role, AMAYA met and spoke with various Laredo-area officials to direct them to take actions that benefitted Co-Conspirator A and Corporation A. Defendant AMAYA maintained close contact with officials who could help Co-

Conspirator A and Corporation A by setting up meetings and passing messages to and from Co-Conspirator A.

## COUNT ONE

### Conspiracy to Commit Federal Program Bribery
### (18 U.S.C. §§ 371 & 666)

6. The general allegations are realleged and incorporated by reference as though fully set forth herein.

7. From at least September 2015 and continuing through at least December 2017, in the Southern District of Texas and elsewhere, defendants

**JAIME ALBERTO CANALES**
**and**
**JOHN "JOHNNY" AMAYA**

did unlawfully, willfully, and knowingly combine, conspire, confederate, and agree with each other and others, known and unknown, including Co-Conspirator A, to commit an offense against the United States, that is, federal program bribery; specifically, to corruptly give, offer, and agree to give things of value to a person, with intent to influence and reward an agent of a local government, that is, a County Commissioner of Webb County, Texas, which received benefits in excess of $10,000 in each one-year period from January 1, 2015 to December 31, 2017, from federal programs involving a grant, contract, subsidy, loan, guarantee, insurance, and other forms of federal assistance, in connection with the business,

3

transactions, and series of transactions of Webb County, involving $5,000 or more, in violation of Title 18, United States Code, Sections 371 and 666(a)(1)(B).

### Purpose of the Conspiracy

8. The purpose and object of the conspiracy was CANALES to unjustly enrich himself by obtaining money and property from AMAYA and Co-Conspirator A in exchange for his official action benefitting Co-Conspirator A and Company A; the purpose and object of the conspiracy was also for Co-Conspirator A and AMAYA to provide things of value to public officials, including Commissioner Canales, in order to influence and reward them to take official action benefitting Corporation A.

### Manner and Means of the Conspiracy

9. The co-conspirators employed various manner and means to carry out the conspiracy, including but limited to the following:

    a. Co-Conspirator A and AMAYA gave and agreed to give things of value to Commissioner Canales, in order to influence and reward him for his official acts as a Webb County Commissioner and Laredo MPO representative. These things of value included checks disguised as campaign contributions and personal loans, use of Co-Conspirator A's Padre Island condominium, and meals and entertainment.

4

      b.     Defendant CANALES accepted these things of value intending to be influenced and rewarded for his official assistance to Company A and Co-Conspirator A.

      c.     Defendant AMAYA acted as a middleman between Co-Conspirator A and the public officials. At Co-Conspirator A's direction, Defendant AMAYA provided cash payments, personal checks disguised as campaign contributions, and meals and entertainment to these officials, including Defendant CANALES. All of the payments were reimbursed with Corporation A's corporate funds, either directly or indirectly.

### Overt Acts

10.    In furtherance of the conspiracy and to achieve its purpose and object, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Texas, and elsewhere, the following overt acts, among others:

      a.     In or about September 2015, Co-Conspirator A provided to CANALES draft language for an engineering consultant services Request for Qualifications (RFQ) to be issued by Webb County Purchasing Department on a road construction project, and he instructed CANALES to advertise the RFQ.

      b.     On or about October 26, 2015, CANALES used his official position to cause the RFQ to be placed on the Webb County Commissioners Court Agenda for the October 26, 2015 meeting.

   c. On or about October 26, 2015, at the Commissioners Court meeting, CANALES voted to authorize the Purchasing Department to issue RFQ 2016-004, "Hachar-Reuthinger Road Project," seeking preliminary engineering services under contract CSJ: 0922-33-166, "Hachar Reuthinger Roadway Project – Northern N.D. Hachar Tract Boundary to I-35."

   d. On or about October 26, 2015, Co-Conspirator A gave and CANALES accepted a $5,000 check, which was disguised in the form of a contribution to CANALES' re-election campaign.

   e. On or about August 4, 2016, Co-Conspirator A provided CANALES with another $5,000 check, again made out to CANALES' campaign. On August 28, 2016, the County's Purchasing Department issued the RFQ.

   f. On August 10, 2016, AMAYA and Co-Conspirator A spoke by phone. After defendant AMAYA updated Co-Conspirator A on the upcoming elections and meetings secured by AMAYA with various Laredo City Councilmen and Webb County Commissioners, Co-Conspirator A discussed a recent meeting regarding funding for a Laredo-area road construction project known as "Loop 20" that had occurred the previous day in Austin, Texas. AMAYA and Co-Conspirator A discussed how CANALES' support for a change order to a Webb County contract benefitting Corporation A was "solid"; how AMAYA would meet with public officials in secret because "sometimes they don't wanna be in public" and how a particular Webb County Commissioner "asked me for some stuff."

AMAYA said, "right now we need him. I need to keep him happy," to which Co-Conspirator A replied, "Yeah, no, you stay with him, uh, you know, it's uh, we're slowly getting there."

  g. On or about September 2, 2016, CANALES asked Co-Conspirator A for additional people to support his next fundraising event, and he also asked Co-Conspirator A if his Padre Island condominium was available that weekend.

  h. On or about September 26, 2016, CANALES voted to approve item 40 on the Commissioners Court Agenda, which awarded the contract described in the RFQ to Corporation A.

  i. On or about September 29, 2016, defendant AMAYA and Co-Conspirator spoke again by phone, where they discussed how to influence and reward other public officials in exchange for action favorable to Corporation A on another Laredo-area road construction project known as the Hachar-Reuthinger project. Co-Conspirator A commented during the call his plan to give a different public official a check for $2,500 "but I don't want to do it unless I know damn well he is with us 120%."

  j. On or about October 13, 2016, Co-Conspirator A sent CANALES a text message asking for help on a pending issue with the Laredo MPO, to which CANALES replied, "Yes . . . no worries my friend."

k.  On or about October 17, 2016, CANALES voted as a member of the Laredo MPO to approve item 5B, which approved the plan and secured the funds for a $4.6 million contract modification, which would ultimately benefit Corporation A.

l.  On or about October 22, 2016, CANALES again contacted Co-Conspirator A, asking for an additional payment.

m.  On or about October 22, 2016, Co-Conspirator called AMAYA and discussed how to handle CANALES' request. Co-Conspirator A explained his concern CANALES might be in trouble with the FBI and that the request was be a "set up deal." AMAYA agreed the request was suspicious. Co-Conspirator A explained he could do "a $5,500 political donation," which CANALES could then borrow from his campaign and then pay it back. AMAYA agreed. Co-Conspirator A also explained CANALES used the term "personal loan . . . meaning he don't want it to show up from [Corporation A]." Co-Conspirator A then explained, "I could basically run it through you, and you know what to do from there…'cause I'm the fish they'd be interested in…" AMAYA agreed.

n.  Co-Conspirator A then explained he would text defendant AMAYA his decision how to handle the issue: "'Cause you know, you—you can text back and forth and then cancel the text and nobody can get it instead of phone conversations." AMAYA replied, "Right, right, right, sir. Okay, sir."

8

o. On October 25, 2016, CANALES and Co-Conspirator A met at a Laredo-area hotel. While there, Co-Conspirator A provided CANALES a $5,500 check to his campaign, which CANALES deposited but did not report on his campaign finance disclosure form.

p. On December 12, 2016, AMAYA sent a text message to two Webb County Commissioners, at the direction of Co-Conspirator A, regarding an item listed on the final Court agenda as item 22:

> It approves us doing the plans for loop 20 airport and Jacaman overpass. We are pending txdot to review our proposal and the court can approve it today so we can push txdot to finish their approvals and get to work. This item includes the approval of contract supplemental 7 and work authorization 3. Pending txdot approval of our proposal so we ensure the county gets reimbursed 100%. Should be read "motion to approve supplement and work authorization 3 pending txdot negotiations, all the work in this item is at no direct cost to the county"

q. At a regular meeting of the Webb County Commissioners Court on December 12, 2016, CANALES and the other commissioners voted to approve items 22, 24 and 25 to the court. Specifically, item 24 was the discussion and possible action to approve and finalize a contract with Corporation A for RFQ CSJ: 0922-33-1266, with a maximum reimbursement amount under an AFA through TXDOT of $240,000. Items 22 and 25 were the discussion and possible action to approve Supplemental Agreements #6 and #7, respectively, under CSJ: 086-14-058 for Corporation A, by creating and approving CSJ: 0086-14-910. Supplemental Agreement #6 increased the amount payable to Corporation A by $157,121.03,

9

while item 25 increased the amount payable to Corporation A by $4,937,340.65, bringing the total payable to Corporation A under CSJ: 086-14-058 to $7,680,965.70.

  r. In or about January 2017, Co-Conspirator A provided CANALES with two $1,000 checks, causing two Corporation A employees to each write a check to CANALES' campaign.

  All in violation of Title 18, United States Code, Sections 371.

       A TRUE BILL
       Original Signature on File

       FOREPERSON OF THE GRAND JURY

RYAN K. PATRICK
UNITED STATES ATTORNEY

BY: _____
  CAROLYN FERKO
  ASSISTANT U.S. ATTORNEY

_____
JOHN P. PEARSON
ASSISTANT U.S. ATTORNEY